REVENUE CABINET, Commonwealth of Kentucky, Appellant

v.

GTE SOUTH, INC., n/k/a Verizon South, Inc., Appellee

and

GTE South, Inc., n/k/a Verizon South, Inc., Appellant

v.

Revenue Cabinet, Commonwealth of Kentucky, Appellee.

Nos. 2004–SC–000519–DG, 2005–SC–000223–DG.

Supreme Court of Kentucky.

Aug. 23, 2007.

As Modified Aug. 30, 2007.

Rehearing Denied Dec. 20, 2007.

Stephen F. Dickerson, Finance and Administration Cabinet, Office of Legal Services for Revenue, Frankfort, KY, Counsel for Revenue Cabinet.

Bruce F. Clark, Erica L. Horn, Stites & Harbison, PLLC, Frankfort, KY, Counsel for GTE South, Inc., N/K/A Verizon South, Inc.

Opinion of the Court by Chief Justice LAMBERT.

The Department of Revenue [1] (Revenue) appeals from the decision of the Court of Appeals which held that Revenue was barred from collecting unpaid sales taxes from Appellee, GTE South, Inc. (GTE) for

---

1. At the inception of the instant case, "Revenue Cabinet" was the proper designation for the agency involved. However, in 2005 the statutory scheme was amended to reflect a change from "Revenue Cabinet" to the "Department of Revenue." *See* 2005 Kentucky Laws Ch. 85 (SB 49).

Revenue's failure to adequately notify GTE of the tax deficiency within the applicable four-year statute of limitations.[2] GTE provides local telephone service in a number of states including the Commonwealth of Kentucky[3] and its services are subject to Kentucky taxation. The two critical issues in this case are whether Revenue's initial notice of GTE's tax deficiency was timely sent and, if so, whether that notice was sufficient.

The Department of Revenue performed two audits, divided into approximately four-year periods, on GTE's sales and use tax reporting from 1987 through 1996. Significant tax deficiencies were assessed for both periods. While GTE protested portions of both assessments, only a portion of the tax assessed during the second audit period is a subject of this case. Specifically, the amount in controversy is $370,313.33, which constitutes the sales tax deficiency assessed for the period of February 1, 1991, through September 30, 1993. The basis for GTE's protest is the timeliness and the sufficiency of the notice that Revenue sent to GTE concerning the deficient taxes.

■ We first examine the timeliness of the notice. KRS 139.620(1) provides that:

As soon as practicable after each return is received, the department shall examine and audit it. If the amount of tax computed by the department is greater than the amount returned by the taxpayer, the excess shall be assessed by the department within four (4) years from the date the return was filed[.] . . . A notice of such assessment shall be mailed to the taxpayer. The time herein provided may be extended by agreement between the taxpayer and the department.

GTE and Revenue agree that the deadline under this provision was October 20, 1997. As is apparently its custom, Revenue sent two separate notification letters concerning GTE's deficiency, an "assessment letter" and a "notice of tax due." GTE received each of these letters but contends that neither of the letters was mailed on or before the deadline of October 20, 1997. The notice of tax due, the second item of correspondence, was dated October 17, 1997 and GTE produced the envelope which showed that it was postmarked October 21, 1997, one day after the deadline. However, Revenue contends that the first item, the assessment letter, which was dated October 16, 1997, was timely mailed.

Finding that the first item of correspondence, the assessment letter, was not timely mailed, the Board of Tax Appeals resolved this factual issue in GTE's favor. The Board cited the deposition of James Gaither, a GTE employee, in support of its finding. In his deposition, Gaither testified that he believed he had received the assessment letter from Rick Ehle, GTE's staff auditor, along with a note indicating that Ehle had received it on the 27th. Ehle also testified, but he did not unequivocally attest to the October 27, 1997 date. He stated that he was initially unsure of the date he received the assessment letter. However, he later stated that he received the letter on October 27, 1997, upon viewing a hand-written "Post-it" note bearing his own signature, stating that he personally received the assessment letter at approximately 2:30 p.m. on that date. However, Ehle did not testify that this was the date the letter was first received by GTE nor was there any evidence to that effect. Furthermore, Ehle admitted, and others

2. KRS 139.620(1).

3. GTE is now Verizon South, Inc. Neither title has been utilized consistently in the record below.

attested, that it was not unusual for Ehle's secretary or supervisor to open his mail before it reached his desk. The "Post-it" note, which was not discovered until two weeks before the hearing, was the only evidence GTE presented indicating a date of receipt for the assessment letter even though it had retained and produced postmark-bearing envelopes for the notice of tax due as well as the assessment letter and notice of tax due concerning the first audit period.

On appeal, the Franklin Circuit Court ultimately [4] overturned the Board's factual finding that the assessment letter was not timely mailed upon its conclusion that the finding was not supported by substantial evidence.[5] The Court of Appeals agreed with the Circuit Court on this issue, and for the reasons articulated by those courts, so do we. Specifically, the sole evidence relied upon by the Board was the "Post-it" note. We agree with the lower courts that the "Post-it" note did not constitute substantial evidence supporting the Board's decision. The "Post-it" note did not establish when the assessment notice was received by GTE. We join the lower courts in noting the significance of GTE's retention of the postmark-bearing envelopes for all the other correspondence from Revenue, but not for this one.

■ Moreover, despite GTE's actual receipt of the assessment notice letter which was dated October 16, 1997, the Board appears to have placed an initial burden upon Revenue or improperly shifted the burden to Revenue to establish that it had a regular scheme or system of mailing. Generally, this burden is utilized to create a presumption that an item of mail was properly sent where the intended recipient denies actual receipt.[6] The regular system of mailing presumption was established to relieve parties of the generally impossible burden of proving the mailing of a particular item when the very act of mailing creates the proof and places that proof in the hands of the recipient.[7]

There is no question that GTE received the assessment letter. The only issue is when it was mailed. On its face, the assessment notice letter bears the date of October 16, 1997, and GTE admits that it was received. As such, conclusive proof of the mailing date, as evidenced by postmark, could only be produced by GTE. And as noted by the trial court, "[T]he postmark date of the October 16, 1997 assessment letter could not be determined because GTE, the Respondent herein, could not produce the envelope in which the letter had arrived. This was despite the fact that GTE could produce the envelopes for all other assessment and notice of tax due letters sent to GTE concerning this audit and a related audit."

■ Thus, we agree with the lower courts that the Board's determination was not supported by substantial evidence. Where correspondence bearing a date has

---

4. Initially, the court affirmed the Board's factual determination. However, it granted Revenue's motion to alter, amend or vacate, stating that it had made an error as to a critical factual finding when reaching its conclusion as to the letter's timeliness. Specifically, the court's initial judgment stated that there was no postmark date stamped upon the envelope containing the assessment letter. In its order granting Revenue's motion, the trial court corrected the error and stated, "In actual fact, the postmark date of the October 16,

1997 assessment letter could not be determined because GTE, the Respondent herein, could not produce the envelope in which the letter had arrived."

5. *See* KRS 13B.150(2).

6. *Koscot Interplanetary, Inc. v. Commonwealth*, 649 S.W.2d 201 (Ky.1983).

7. *Id.*

been received, a party who disputes the timely mailing of the correspondence bears the burden of proof with respect to the issue. The lower courts correctly reversed the Board and concluded that the assessment letter was timely sent.

■ Relying on KRS 131.081(8), GTE also maintains that the assessment letter was statutorily insufficient. KRS 131.081(8) provides:

> The department shall include with each notice of tax due a clear and concise description of the basis and amount of any tax, penalty, and interest assessed against the taxpayer, and copies of the agent's audit work papers and the agent's written narrative setting forth the grounds upon which the assessment is made.

As noted above, Revenue sent an assessment letter and a notice of tax due to GTE regarding the audit. The assessment letter, which was timely sent, provided the amount and basis for the outstanding taxes assessed by the auditor, a copy of the audit report, and copies of the auditor's work papers. GTE was also informed that a formal tax bill (notice of tax due) would be forthcoming within the next five days. The notice of tax due, which was sent the day after the statutory deadline, contained much of the same information as the assessment letter, but also included a calculation of interest and penalties, although in this case, no penalties were assessed.

GTE asserts that there must be notice of all five requirements enunciated in KRS 131.081(8) and that such notice must be given prior to expiration of the limitations period provided in KRS 139.620(1). Consequently, it contends that Revenue's failure to give notice of interest and penalties prior to the expiration of the limitations period renders the entire assessment null and void. The Court of Appeals agreed and held that notwithstanding the timeli-

ness of the first correspondence, its failure to contain all five requirements of KRS 131.081(8) barred Revenue from collecting the assessed deficiency. However, such a result is not compelled by the statutes.

A taxpayer is entitled to the information specified in KRS 131.081(8) with the "notice of tax due." However, the requirements of KRS 131.081(8) do not appear in the statute of limitations, KRS 139.620(1), whereby Revenue is merely required to send notice to the taxpayer of any excess tax assessed as a result of the audit. The limitations statute requires disclosure of the excess tax, the difference between the amount of tax computed by the department and the amount returned by the taxpayer. Under the plain language of the statute, Revenue's responsibility is to mail within four years the notice of the assessment, stating the existence and amount of excess tax. KRS 139.620 does not contain language indicating that the notice of assessment must include information other than the amount of excess tax. Indeed, the statute does not require, nor even mention, interest, penalties, copies of the agent's audit work papers or the agent's written narrative.

■ Furthermore, the taxpayer is protected by KRS 131.110(1) which provides forty-five (45) days from the date of the notice that a tax has been assessed to either protest or pay the tax. Necessarily, this time period does not begin to run against the taxpayer until he has been given all of the necessary information required under KRS 131.081(8). Just as a complete failure to transmit all of the required information would constitute a violation of KRS 131.081(8), so too would an attempt to begin the forty-five day period prior to sending all of the required information. And in either case, the General Assembly has provided a specific damage

remedy for such violations.[8] It would be illogical to presume that the General Assembly would create a damages remedy for noncompliance with KRS 131.081(8), if there was already a remedy that completely relieved the taxpayer of the assessment.

■■ Furthermore, as statutes of limitations generally deal with formal causes of action,[9] our treatment of limitations statutes concerning lawsuits is instructive. The primary purpose of any limitations statute is to require timely notification to a party that a *claim* is being brought against him. While a party is entitled to notice of the *claim*, evidenced by a formal complaint within the limitations period, that party is not entitled to all of the theories or proof supporting that claim prior to the deadline. The Rules of Civil Procedure permit claims to be amended and supplemented subsequent to the limitations period provided that the original notice was timely.[10] Such amendments relate back to the filing date of the original notice.[11] We see no reason the same logic should not compel a similar result where a taxpayer has been given timely notice that Revenue is making a claim against him for tax deficiencies. Accordingly, we conclude that Revenue's initial letter which notified GTE of its assessment and of the amount of the assessed tax deficiency was sufficient to satisfy KRS 139.620(1).

Our disposition of these issues renders all other issues presented herein moot.

For the reasons set forth hereinabove, the Court of Appeals' decision is reversed for further proceedings consistent herewith.

All sitting. LAMBERT, C.J., and CUNNINGHAM, MINTON, NOBLE, and SCOTT, JJ., concur.

SCHRODER, J., dissents.

---

8. *See* KRS 131.081(14).

9. BLACK'S LAW DICTIONARY 1422 (7th Ed.1999).

10. CR 15.03(1).

